IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| BRENDA ELAINE OUTLAW, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 313-060 |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security ) | |
| Administration, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Brenda Elaine Outlaw ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.  BACKGROUND

Plaintiff protectively applied for SSI on August 26, 2009, alleging a disability onset date of July 1, 2007. Tr. ("R."), pp. 126-30. The Social Security Administration denied Plaintiff's application initially and on reconsideration. R. 63-68, 74-80. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), R. 81-82, and the ALJ held a hearing on November 17, 2011. R. 33-62. At the hearing, the ALJ heard testimony from Plaintiff, who was represented by

counsel, and from Ronald J. Spitznagel, a Vocational Expert. Id. On January 12, 2012, the ALJ issued an unfavorable decision. R. 16-32.

Applying the sequential process required by 20 C.F.R. § 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since August 26, 2009, the application date (20 C.F.R. § 416.971 *et seq.*).

2. The claimant has the following severe impairments: morbid obesity causing mechanical low back pain; mixed mood disorder; and mixed personality disorder with a pattern of avoidance and obsessive-compulsive features (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. § 416.967(c)[1] except she is an individual whose morbid obesity causes mechanical low back pain that limits her to performing medium exertional work activities. She can individually sit, stand, walk, push and/or pull for at least six of eight hours each eight-hour workday. She can lift/carry 50 pounds occasionally (up to 1/3 of an eight-hour workday) and 25 pounds frequently (up to 2/3 of an eight-hour workday). She has no postural or environmental limitations of function.
Her mixed mood and mixed personality disorders restrict her to performing work activities with an SVP no greater than 1-2.[2] While her concentration may drift for up to 1/3 of an eight-hour workday if the work is repetitive, routine, or boring, she can pay enough attention to details to meet the general productivity requirements of the job(s) within the same workday. Even though her pace might be disrupted once or twice a week, she will still be able to perform assigned tasks by the end of the same workday. The claimant has no past relevant work. (20 C.F.R. § 416.965).

5. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the

---

[1] "Medium work" is defined as work that "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary work." 20 C.F.R. § 416.967(c).

[2] Using the skill level definitions in 20 C.F.R. § 416.968(a), the Dictionary of Occupational Titles lists a specific vocational preparation (SVP) time for unskilled work of 1-2. See SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000). Thus, in assigning Plaintiff an RFC restricting her to work activities with an SVP no greater than 1-2, the ALJ limited Plaintiff to unskilled work.

claimant can perform (20 C.F.R. §§ 416.969 and 416.969(a)), including laundry worker, hand packager, and cleaner II.[3] Therefore, the claimant has not been under a disability, as defined in the Social Security Act, since August 26, 2009, the date the application was filed (20 C.F.R. § 416.920(g)).

R. 19-27.

When the Appeals Council denied Plaintiff's request for review, R. 1-6, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of the adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ did not find that her mental retardation[4] was a severe impairment; and (2) she qualified for automatic disability under Listing 12.05(B) or 12.05(C), both of which pertain to intellectual disability. (See doc. no. 13 ("Pl.'s Br.").) The Commissioner maintains that the ALJ's decision is supported by substantial evidence and should therefore be affirmed. (See doc. no. 14 ("Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure

---

[3]According to the Dictionary of Occupational Titles, cleaner II, # 919.687-014, is medium, unskilled work that involves cleaning interiors and exteriors of transportation vehicles, including cleaning windows, replenishing sanitary supplies in vehicle compartments, removing dust and grease, polishing a vehicle exterior, and fumigating the interior of a vehicle.

[4]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability," 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (*per curiam*). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues the ALJ erred at step two of the sequential evaluation when he did not list her

level of intellectual functioning as a severe impairment, and Plaintiff argues the ALJ erred at step three of the sequential evaluation in failing to find that she satisfies Listing 12.05(B) or 12.05(C). (Pl.'s Br., pp. 5-10.) The Commissioner counters that Plaintiff did not prove the existence of intellectual limitations not accounted for in the ALJ's RFC and that she did not prove she satisfies Listing 12.05(B) or 12.05(C). (Comm'r's Br., pp. 4-12.) As set forth below, Plaintiff's arguments fail because the ALJ properly relied on substantial evidence in finding Plaintiff's IQ scores are not valid, see R. 22, 24-26, and thus the record evidence does not support the level of intellectual impairment Plaintiff alleges.

### A. Substantial Evidence Supports the ALJ's Decision that Plaintiff Has No Severe Impairment Related to Intellect.

A severe impairment is one that significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." Id. § 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process, if the claimant does not have "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," without consideration of age, education, or work experience, then the ALJ will find that she does not have a severe impairment and is therefore not disabled. 20 C.F.R. § 416.920(c); see also Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*) ("[T]he claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of [her] age, education, or work experience.")

The ALJ did not err in finding that Plaintiff has no severe impairment related to her intellect. First, as discussed in detail below in Part III.B, there are no valid IQ scores in the record, and thus to the extent Plaintiff argues her IQ score alone validates her assertion of a severe impairment, the contention is without merit. Second, substantial evidence in the record supports the ALJ's conclusion that Plaintiff's level of adaptive functioning shows her intellectual capacity does not significantly limit her ability to do basic work activities. In particular, the ALJ noted Plaintiff's success in working for the Department of Children and Family Services and raising seven children. R. 22, 238. Plaintiff also worked as a hairdresser. R. 26, 238.

Plaintiff had no restriction in daily living, as she was able to take care of her personal hygiene, share child rearing duties with her husband, and read the Bible as a hobby. R. 22, 172-76. The ALJ also specifically noted Plaintiff's physical problems, not her mental impairments, appeared to be the primary basis for limitations in activities of daily living. R. 22, 179. Plaintiff had only mild difficulty with social functioning, as she reported having the ability to go out in public to grocery

shop, talk on the phone with family members several times a week, and get along well with authority figures. R. 22, 175-78. Although the ALJ found moderate difficulties with concentration, persistence or pace caused by Plaintiff's mixed mood and mixed personality disorders, he accounted for that in his RFC by limiting Plaintiff to unskilled work at the SVP 1-2 level. R. 22-23, 25, 27; see also R. 54-55.

In sum, substantial evidence supports the ALJ's conclusion that Plaintiff's intellectual capacity is not sufficiently diminished to qualify as a severe impairment. There are no valid IQ scores or limits in adaptive functioning to suggest Plaintiff's level of intellectual functioning significantly limits her ability to perform basic work activities.

### B. Substantial Evidence Supports the ALJ's Decision that Plaintiff's Did Not Meet or Equal Listing 12.05(B) or (C).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (*per curiam*) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled

without regard to the claimant's age, education, or previous work experience. 20 C.F.R. § 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014) (*per curiam*); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

The criterion of 12.05(B) is met when a claimant presents "a valid verbal, performance, or full scale IQ of 59 or less." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Alternatively, 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when she, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). To satisfy the additional impairment prong of Listing 12.05(C), Plaintiff needs to show that the impairment "significantly limits [her] physical or mental ability to do basic work activities, *i.e.*, is a 'severe' impairment(s), as

8

defined in §§ 404.1520(c) and 416.920(c)." Willard v. Colvin, No. 5:12-cv-03536-JHE, 2014 WL 1664300, at *4 (N. D. Ala. Apr. 25, 2014) (citing Listing 12.00(A).)

In the context of mental disorders, the regulations provide that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(a). Likewise, the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

Plaintiff's argument that she meets the requirements of Listing 12.05(B) or (C) based on her IQ scores in the record is without merit. (Pl.'s Br., pp. 7-10). As the ALJ explained, Marvin L. Long, Ed. D, consulting psychologist, evaluated Plaintiff twice, once on July 7, 2010, and again on October 19, 2011, at the request of Plaintiff's attorney. R. 24-25 (citing Exs. 9F & 14F). During Dr. Long's first examination, he diagnosed her with "Mental Deficiency-Mild," but specifically stated that her scores, including a full scale IQ of 56, were "reported for base-line purposes only." R. 25, 361. Dr. Long did "not offer [the scores] as a valid estimate of [Plaintiff's] general cognitive capability," (R. 25, 361), and he several times qualified his report by reminding the reader of validity problems, for example: (1) "SS-77 (Symptom Survey – 77) brings out major problems with the

Validity Scale, Magnification as well as Minimization," R. 362; (2) "Once again I remind you to be very careful, we got real problems with the Validity Scale here," R. 363; (3) [Plaintiff] is restricted, but nowhere near as restricted as tried to project on psychometrics," R. 363; and (4) "If we take everything at face value today, [Plaintiff] needs help in all areas. However, that's not the situation. [Plaintiff] has much more adaptive capability and has over the years." R. 363.

At Dr. Long's second evaluation on October 19, 2011, he again diagnosed Plaintiff with "Mental Retardation – Mild," but repeated that "we have to be careful" of her scores, including a full scale IQ of 57, because he "ran into some problems on the SS-77 Validity Scale." R. 25, 396, 397, 399. As with the first evaluation, Dr. Long noted that Plaintiff was "aware of the reason she's here." R. 366, 399. Dr. Long identified Plaintiff as a "slow learner," R. 398, and gave an "unfavorable" prognosis for work based on not only the cognitive areas he tested, but also her subjective complaints of pain and related limitations, as well as lack of work experience. R. 399. Dr. Long did not acknowledge discrepancies in the information provided at Plaintiff's first versus second evaluation. The ALJ, however, did. R. 24-25.

Plaintiff first reported she dropped out of school in the ninth grade because she got pregnant at age 14, but she had been in regular classes during most of the time in the Johnson County School system. R. 25, 360. In 2011, she reported dropping out of the eighth grade after spending most of her time in special classes. R. 25, 395. The ALJ also noted Plaintiff's self-reported ability to read as a hobby, handle her own finances, work as a hairstylist and babysitter, and raise seven of her own children. R. 25, 175-76, 238, 397-99. Thus, substantial evidence supports the ALJ's decision to discount Dr. Long's low IQ scores for Plaintiff and resultant opinion on her level of intellectual

functioning.[5] R. 22, 24-26. Indeed, as explained above, Dr. Long himself questioned the results of both evaluations because of "problems" with validity scales incorporated into the testing.

Even if Plaintiff had valid IQ scores in the record, which she does not, Eleventh Circuit case law provides that an IQ score inconsistent with other evidence in the record on the claimant's daily activities and behavior need not be accepted. Lowery, 979 F.2d at 837; see also Hodges, 276 F.3d at 1269; Popp, 779 F.2d at 1499. Here, the ALJ set forth several reasons supported by substantial evidence for concluding that Dr. Long's reported IQ scores for Plaintiff were inconsistent with Plaintiff's daily activities. R. 22-26. As discussed in Part III.A, *supra*, Plaintiff had no restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace. R. 22. Plaintiff had previously worked for the Department of Children and Family Services and as a hairdresser, raised seven children, prepared her own meals, ironed and washed her clothes, went grocery shopping, handled her own finances, was never laid off from a job because of problems getting along with people, and was able to follow instructions. R. 22, 25-26, 172-76, 219-26, 238. Simply put, the objective evidence of record, as reviewed and explained by the ALJ, does not support a finding of the level of limited mental functioning as argued by Plaintiff.

Finally, Plaintiff's argument concerning a presumption of lifelong intellectual disability is a red herring because as discussed above, there are no valid IQ scores in the record that would invoke the presumption. See Hodges, 276 F.3d at 1268-69 (remanding for application of presumption of mental impairment before age twenty-two where ALJ had accepted validity of

---

[5]The two reports by Dr. Long contain conflicting information from Plaintiff on several fronts. Plaintiff first reported having been married four times and having a total of seven children from eight pregnancies, R. 360, but then she reported one marriage and seven children from six pregnancies. R. 395. Plaintiff originally reported cutting hair and working in factories as prior work, R. 360, 362, but then she reported only having worked fixing hair and doing some baby-sitting. R. 395. As one final example, at her first evaluation, Plaintiff denied hearing voices or seeing things, R. 361, but at her second evaluation, she reported a history of hearing people calling her name and sometimes seeing her deceased mother. R. 396.

record IQ scores). Moreover, the ALJ's discussion of significant adaptive functioning, as recounted above, discounts the establishment of "deficits in adaptive functioning initially manifesting during the developmental period." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. Plaintiff's self report of not being disabled prior to age 22 also cuts against her current argument. See R. 126.

In sum, substantial evidence supports the ALJ's conclusion that Plaintiff is not intellectually disabled and that her IQ scores are invalid and do not satisfy the requirements of Listing 12.05(B) or (C). Rather than improperly making a medical determination, as suggested by Plaintiff (Pl.'s Br., p. 7), when rejecting Dr. Long's opinion, the ALJ properly evaluated and discredited Dr. Long's IQ scores for Plaintiff in light of the entirety of the record evidence. Thus, there is no basis for reversal or remand.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED his 11th day of September, 2014, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA